## No. 2023
### Second Circuit

---

### VAUGHN v. KEMP

---

(June 30, 1926. Opinion and Decree.)

---

(Syllabus by the Editor.)

1. **Louisiana Digest—Landlord and Tenant —Par. 63.**

Article 2726 of the Civil Code, which allows the lessor to retain the improvements which he has placed upon the soil on paying a fair price does not apply where the land has been sold to a third party by the lessee.

2. **Louisiana Digest—Registry—Par. 7.**

Under Civil Code 2266 all sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto.

3. **Louisiana Digest—Sales—Par. 192.**

The purchaser of real estate cannot be affected by unrecorded claims against the property, such as a garage erected thereon by a third party, even though at the time of the purchase he had actual knowledge of them.

4. **Louisiana Digest—Things—Par. 4.**

Under Article 464 of the Civil Code lands and buildings or other constructions, whether they have their foundation in the soil or not, are immovable by their nature.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. E. P. Mills, Judge.

Action by Mrs. Maude Vaughn, et al., against J. L. Kemp.

There was judgment for defendant and plaintiffs appealed.

Judgment reversed and injunction perpetuated.

Wilkinson, Lewis & Wilkinson, of Shreveport, attorneys for plaintiffs, appellants.

Scheen & Blanchard, of Shreveport, attorneys for defendant, appellee.

ODOM, J. Plaintiff alleges that, on May 4, 1923, she purchased lot 16 of the Springhill subdivision of the city of Shreveport together with all the buildings and improvements thereon, from F. R. Hodges, by notarial act, which is duly recorded in the notarial records of Caddo parish, and that subsequent to her purchase of the property and the recordation of her deed thereto the defendant, J. L. Kemp, has attempted to remove from the premises a small frame garage, and she brings this suit claiming ownership of the said garage and asking that the defendant be enjoined from removing it off the premises.

The defendant, in answer, set up that he built the said garage on the premises while he was a lessee thereof from Mrs. Rachich, which garage was built at his own expense and with the understanding with the lessor that he might remove it therefrom at any time he saw fit.

There was judgment in the District Court rejecting plaintiff's demands, from which she appealed

### OPINION.

The case was submitted on the following agreed statement of facts, to-wit:

"That for several months prior to May 4, 1923, Mrs. Mary B, Raccich, the owner thereof, leased lot 16 of the Springhill subdivision of the city of Shreveport, Caddo parish, Louisiana, together with the dwelling house thereon, to J. L. Kemp, said lease being from month to month and being a verbal lease with nothing filed of record to indicate the existence of same in either the conveyance or mortgage records of Caddo parish, Louisiana; that while J. L. Kemp was a tenant of Mrs. Raccich he built on the leased premises a small wooden frame garage of the value of two hundred and five dollars which was not attached to cement and could be removed, leaving the property in the same condition, the said structure being built on heavy timbers which lay on the ground; that on May 2, 1923, Mrs. Mary B. Raccich sold to F. R. Hodges the aforesaid lot, lot number 16 of the Springhill subdivision of the city of Shreveport, Caddo parish, Louisiana, as per map of said subdivision recorded in conveyance book 53, page 23, of the records of Caddo parish, Louisiana, together with all buildings and improvements thereon, and that on May 4, 1923, F. R. Hodges transferred the same to the plaintiff in this suit; that Mrs. Mary B. Raccich gave her consent to F. L. Kemp to erect said garage on said premises with the understanding that he could remove same at the termination of the lease if he so desired; that F. R. Hodges, of the plaintiffs in this suit, did not know that said garage belonged to F. L. Kemp; and that said garage was on the premises for several months prior to the sale to F. R. Hodges as aforesaid."

After the property was purchased by plaintiff, defendant, who had erected the garage, attempted to remove same in accordance with his agreement with Mrs. Raccich.

Article 464 of the Civil Code reads as follows:

"Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature."

Under this article of the Code, plaintiff contends that she purchased the said garage along with other improvements on the lot under the clause in the deed, "with all buildings and improvements thereon", and she invokes in her behalf Article 2266 of the Civil Code which reads, in part, as follows:

"All sales, contracts and judgments affecting immovable property, which shall not

be so recorded. shall be utterly null and void, except between the parties thereto."

On the other hand, the defendant points out that Mrs. Raccich did not own the garage and that her sale thereof to Hodges and Hodges' sale to plaintiff was absolutely null and void under Article 2452 of the Civil Code, which provides:

"The sale of a thing belonging to another person is null."

And counsel argue that plaintiff, having obtained no title to the property, the defendant is privileged to remove the same under the agreement with Mrs. Raccich, his lessor, and under the express language of the Civil Code, Article 2726, which provides that:

"The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it."

It being admitted that the garage was not attached to the soil by cement or mortar but was supported by wooden blocks.

Counsel for defendant stress the point and cite many authorities to support it, that a lessee may remove the improvements which he places on the leased premises, unless such additions "be made with lime and cement", in which event "the lessor may retain them, on paying a fair price". Civil Code, Art. 2726.

No citation of authority is necessary on that point, for the Civil Code specifically grants to him that privilege. But that is not the point in this case. The question is, whether he may remove such improvements after the ground on which they were placed, "with all buildings and improvements thereon", has been sold to a third person without notice.

It is admitted that there was a contract between Mrs. Raccich, the lessor, and defendant, her lessee, that defendant was to be the owner of the garage built by him and that he should have the privilege of removing the same.

It is further admitted that the records of Caddo parish did not disclose this fact.

And it is further especially admitted that neither Hodges, who purchased from Mrs. Raccich, nor plaintiff, who purchased from Hodges, had in fact any knowledge of the fact that the garage was built by defendant or of the agreement between the lessor and the lessee that the lessee should be the owner thereof with the privilege of removing it.

Plaintiff therefore purchased and now holds the property in good faith.

Article 464 of the Code is a broad, concise statement of the law that:

"Lands and buildings or other constructions, *whether they have their foundations in the soil or not, are immovable by their nature.*" (Italics ours.)

There is no qualification of this rule. The law makes no distinction between buildings erected by the owner and those erected by tenants or others. If they are erected on the land, they are immovable by their nature.

There are also things which are immovable by their destination, as:

"Things which the *owner* of a tract of land has placed upon it for its service and improvement."

Civil Code, Art. 468.

Under this article things become immovable by destination only when placed thereon by the owner of the soil.

But the provisions of the Code, Article 464, with reference to things immovable

by their nature, does not state that they shall be placed on the soil by the owner thereof.

It therefore follows that a building placed upon leased premises by the lessee is an immovable under Article 464 of the Code.

It is not contended that Mrs. Raccich, the lessor, did not sell the garage; but it is contended by counsel for defendant, and so held by our learned brother of the district bench, that under the express provisions of Article 2452 of the Code the sale was a nullity.

Let it be said that the sale of a thing belonging to another is null under the Code. However, it is also true that one who purchases immovable property in good faith from the record owner thereof without notice of any claim or right which another may have thereto is protected under the registry laws of the state.

The fact that the record owner of immovable property may convey a valid title thereto to an innocent third person even though he be not the owner of the property at the time of the sale, is too plain for argument. To illustrate: A sells a parcel of ground to B for an adequate consideration by notarial act in due form. The moment the sale is complete A ceases to be the owner of the property. But B fails to record his deed in the notarial records of the parish where the property is situated. A subsequently conveys the same property to C who has no knowledge of the sale to B. C records his title. A day later B records his deed. C's title to the property is good, because Article 2266 of the Code provides that:

"All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto."

In the case of Duson vs. Roos, 123 La. 835, 49 South. 590, the court said:

"It is plain that a purchaser of real estate in good faith from the owner of record cannot be affected by equities which may have existed between former owners of the property and third persons, but which do not appear of record."

Citing Harris vs. Natalbany Lumber Co., 119 La. 978, 44 South. 806.

In the case of Herndon vs. Wakefield-Moore Realty Co., 143 La. 724, 79 South. 318, the court, in discussing the effect of unrecorded contracts as to third persons, said:

"To be 'utterly null and void' means to have no legal existence. Therefore, when Taylor and Lawhon came to deal with the defendant company, with respect to this property, this alleged contract of plaintiff had no legal existence as to them. It being non-existent as to them, they would have scanned their legal horizon in vain to discover it or to discover any rights that plaintiff might have under it."

So that, whereas it is true that the sale of a thing belonging to another is null, yet with reference to sales of immovable property the rule necessarily yields to other provisions of the Code relative to registry. Therefore, it avails defendant nothing to invoke the provisions of Article 2452 of the Code to the effect that the sale of a thing belonging to another is null.

On this point the following taken from the body of the opinion in the case of Waller vs. Colvin, 151 La. 765 (775), 92 South. 328, is pertinent:

"It is therefore clear, under the authority of these decisions, that the settled public policy of the state that protects innocent third persons acquiring real estate on the faith of recorded titles is paramount to that which merely protects individuals against acts done in violation of a prohibitory law."

And the court quoted approvingly the following from Baker vs. Atkins, 107 La. 494, 32 South. 71:

"It is obviously of the utmost importance to the peace and welfare of society that all questions as to the manner in which title to property is acquired and divested, and as to the moment at which one person becomes, and another ceases to be, the owner should be governed by definite and fixed laws."

It is also contended by counsel and held by the court below, that one who purchases immovable property knows or must know that a lessee may remove from the leased premises the improvements which he has made under the provisions of Article 2726 of the Code.

If this doctrine can be invoked against a purchaser of immovable property he would, in addition to having to inspect the public records, be driven to the necessity of canvassing the city to ascertain if any third person had claims to or against the buildings thereon.

Under the registry laws of the state a purchaser is required to look no further than the public records to ascertain whether there are claims, contracts, judgments, liens or incumbrances affecting the title to an immovable. If it is possible to settle any question, that one is settled.

In the case of Soniat vs. Whitner, 141 La. 235, 74 South. 916, the court held that a purchaser of real estate cannot be affected by unrecorded claims against the property, even though he had actual knowledge of them at the time of the purchase, and the court said:

"By the decision in McDuffle vs. Walker, 125 La. 152, 51 South 100, and many subsequent decisions, the once vexatious question of whether the purchaser of real estate can be affected by unrecorded claims against the property, even though at the time of the purchase he had actual knowledge of them, has been settled in the negative—let us hope forever."

See Baird vs. Atlas Co., 146 La. 1091, 84 South. 366.

If defendant be permitted to invoke against plaintiff the law which he is presumed to know, that a lessee may remove his improvements off the leased premises, the plaintiff may invoke in her own favor Article 506 of the Code, which provides that buildings and structures put on the soil are supposed to have been made by the owner at his own expense and to belong to him, and Article 505 to the effect that the ownership of the soil carried with it the ownership of all that is above it.

When plaintiff in this case viewed the premises which she purchased, she saw certain buildings thereon. She had the right, under the law, to presume that they had been erected thereon by the owner of the lot and that they belonged to him. She examined the public records and found no claims or contracts recorded against them. She purchased on the faith of the public records. Admittedly she had no knowledge that defendant had ever occupied the premises as a lessee, much less any knowledge of any agreement between Mrs. Raccich and defendant as to the ownership of the garage.

Plaintiff purchased the lot "with all buildings and improvements thereon."

Her title to the garage is good and defendant has no right to remove it.

Our conclusion, we think, is amply supported by the above cited codal provisions and decisions of the Supreme Court, but if further authority is needed we cite the following decisions where points similar to the one in the case at bar were presented and decided by the court.

Louisiana Land & Pecan Co. vs. Gulf Lumber Co., 134 La. 784, 64 South. 713.

Boagni vs. Stedman, 139 La. 851, 72 South. 417.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed; and it is now ordered, adjudged and decreed that the preliminary writ of injunction sued out and issued herein be sustained; and further ordered that said writ be and the same is perpetuated, and that defendant J. L. Kemp, is hereby enjoined and restrained from removing the said garage from the premises of plaintiff, all as prayed for. All costs to be paid by defendant.