The opinion of 'the court was delivered by
Nicholls, C. J.
The plaintiffs are appellants from a judgment of the District Court dismissing their demand upon exceptions filed by ■defendants that it disclosed no cause of action.
The petition alleged that from January 24th, 1899, to March 18th, 1899, both dates inclusive, they made advances of necessary supplies and'monies "for the purpose of planting and cultivating a crop of sugar cane, corn and hay on the Abby and Highland Plantations, situated in -this parish, and then owned jointly by Joseph Weill, a resident of the Parish of Orleans, and T. D. Kent, a resident of this Parish, composing the firm of Kent & Weill, said advances amounting, in the aggregate, to ten thousand, one hundred and sixty-six and 15-100 dollars. That in reduction of said amount had been paid one hunderd and thirty-five and *2141 36-100 dollars, leaving thus due and unpaid on account of said adt'ances, ten thousand and thirty-one and 39-100 dollars, as all Avill be-more fully shown by a detailed account hereto attached and made a part hereof, and which said amount is now due.
That under the law, petitioners had a lien and privilege on all the sugar, molasses, corn and hay, raised and produced on said plantations, during the year 1899.
That the present owner of the said plantation was the Abby and Highland Planting and Manufacturing Company, Limited, said company having- its domicile in this parish and having bought sanie from Thomas Beary, a resident of this parish, who became the adjudicatee. and purchaser of one undivided half on June 17th, 1899, and of the other undivided half on July 1st, 1899, at sheriff’s sales in foreclosure-proceedings under executory process of said Beary against Joseph Weill and T. D. Kent, respectively.
That said company well knew, before its purchase of said plantations,, of the just and existing claim of petitioners as aforesaid, for advances, to said plantations, and especially did its president, Thomas Beary, and other officers and stockholders, have personal knowledge of same before-said purchase. And that said claim was recorded in the Parish of Lafourche, in the office of the clerk of this court, in the book provided for the registry of such privilege claims, before the purchase by said company of said plantations.
That Thomas Beary, the adjudicatee and purchaser at sheriff’s sale aforesaid, and the president of said company, well knew, before he became the purchaser and adjudicatee, as above set forth, of the existence and justness of petitioner’s aforesaid claim for advances on said plantations during the current year, and that-through himself and his agents and attorneys-at-law, he persuaded and induced your petitioners not to have said claim registered in the clerk’s office, of this parish, where the same had been sent and received by the clerk of this court, ex-officio recorder for registry prior to Juno 17th, 1899, the day of the first sale at which Beary became adjudicateei, persuading petitioners to Avithdraw same from the clerk.
That the same attorneys-at-laAV, who represented said Beary in this transaction, were the representatives at the time of all parties now constituting the stockholders of the said company, and were the advisers of said parties in the organization of said company, and in the transfer by said Beary to it of said plantations, and well knew all the time of the- *2142 ■ existence and justness of said claim. That at the time said Peary .became the adjudicatee and purchaser at the said sheriffs sales, he was .acting for himself as well as being the agent of the other persons con.•.stituting the stockholders of said company, the organization of said ■ company and the transfer to it of said plantations having been previously agreed upon by said Beary and said other stockholders in the ■•event Beary should become the adjudicatee at sheriffs sales, and that the said Beary in persuading petitioners not to register their, claim, as ..aforesaid, and to withdraw the account from the recorder’s office, acted for himself and for each of the prospective stockholders of said company, tb-wit: E. U. Morvant, Lawrence Keefe and C. P. Shaver.
Petitioners averred that the said partnership of Kent & Weill was -.thus justly and legally indebted to petitioners, the firm of Joseph Weill ■ é Company, in the sum of ten thousand and thirty-one and 39-100 -dollars, with eight per cent, per annum interest from March 18th, 1899, ..and that each of the members of the firm of Kent & Weill was indebted -.to petitioners for his virile proportion of said amount.
Petitioners averred their inability to furnish bond to sequester the .-.sugar and molasses and other products raised during this year on the aforesaid plantations, but they desiréd to preserve their _ privilege -¿hereon and to secure the payment of aforesaid advances.
The plaintiffs prayer was for citation upon Kent & Weill and the members thereof — the Abby and Highland Planting and Manufacturing Company, Limited, and Thomas Beary; that they have judgment ¿against Kent & Weill for ten thousand and thirty-one and 39-100 -dollars, with eight 1per cent, per annum interest thereon from March 18th, 1899, and against each member thereof for his virile share thereof, -and that said Abby and .Highland Planting and Manufacturing Com-pany, Limited, and the said Thomas Beary, individually, and as presi-dent of said company, be ordered to render full and faithful accounts of .-all the sugar and molasses and other products raised on said plantations • during the year 1899, and turn over the proceeds thereof to petitioners .to an amount sufficient to pay the aforesaid amount of advances with interest, or that in default of their doing this, petitioners have judgment against said Abby and Highland Planting and Manufacturing 'Company, Limited, and against Thomas Beary in solido for said- sum of -.ten thousand and thirty-one and 39-100 dollars with eight per cent, per ■annum interest thereon from March 18th 1899, and-recognizing the ^privilege of the advancer of. necessary supplies- and.monies on the said *2143 sugar and molasses and other products to secure the payment of said judgment, and for costs and for all general relief.
Opinion.
The privilege claimed by the plaintiff is that granted by Article 3211 of the Civil Code, in the following terms:
“The debts which are privileged on certain movables are the following:
7T * * * * * * * *
“The debts due for money actually advanced and used for the purchase of necessary supplies, and the payment of necessary expenses, for any farm or plantation on the crops of the year, and the proceeds thereof. * * * The privilege hereinbefore granted to the overseer, the laborers, the furnishers of supplies and the party advancing money to carry on any farm or plantation, shall be concurrent and shall not be divested by any prior mortgage whether conventional, legal or judicial, or by any seizure and sale of the land while the crop is on it.”
The litigation in this case has risen from the fact that the contract between the plaintiffs and Joseph Weill and T. D. Kent was not recorded when the property, for whose cultivation the money and supplies were furnished, was sold at judicial sale in enforcement of special mortgages resting upon the same in favor of Thomas Beary, one of the present defendants.
It is contended by the defendants that the privilege in question was (at least at the time of the sale) a privilege upon an immovable, as1 the crop upon the plantation was then standing by the roots and passed to the purchaser of the property as part of the realty, and, therefore, not being recorded, the property passed to the puchaser free from the privilege.
That under Article 186 of the Constitution “no mortgage or privilege on immovable property shall affect third persons, unless recorded or registered in the parish, where the property is situated, in the manner and within the time as is now prescribed by law, except privileges for expenses of last illness and privileges for taxes, State, parish or municipal; provided such tax liens, mortgages and privileges shall lapse in three years from the 31st of December in the year in which the taxes are levied and whether now or hereafter recorded.”
Plaintiffs, on the other hand, urge that the privilege in question was *2144 never otherwise than a privilege on a movable, and that at all events, even' though it might have been temporarily suspended, while the crop stood upon the roots, it would spring into active existence the moment it should be detached from the realty, and then affect both the crop itself and its proceeds.
It will be noticed that the law itself in creating the privileges under Article 3217 C. C. declared them to be privileges on particular movables, and this privilege for money and supplies certainly never struck the realty itself.
We have on two occasions (Flower & King vs. Skipwith, 45th Ann. 895, and Hewett vs. Williams, 47th Ann. 752) held that the privilege was one upon a movable, and- did not call for registry to make it effective.
The law respecting it is drawn with direct reference to the fact that crops might be considered sometimes as movables and sometimes as immovables, under varying circumstances, and with the reference to the relations of different parties towards them, for it does not exact registry and in express terms it malms a sale of the real estate under a pre-existing mortgage, leave the privilege in full force entirely unaffected by the sale, a departure from the results flowing from, the general law governing cases where real estate is sent to sale judicially upon which there exists at the time of sale, recorded (mortgages and privileges. C. P. 679, 683, 684, 685, 706; C. C. 3268.
The record in this case does not show for what price the property was sold, nor does it show how the price of adjudication was credited but we assume that it was placed in its entirety to the credit of the seizing mortgage creditor as if there was no privilege on the crop, leaving-the furnisher of supplies to obtain payment of his claim by personal judgment, against the parties with whom he contracted, and by recourse upon the crop upon which the law gave him a privilege.
It is within the power of the General Assembly to make such classification of things into movables and immovables, as it may think proper, to make lliem be one or the other at different times, to fix and determine the rights and obligations of parties touching them, in view of their shifting from one classification to the other, provided this should be done under circumstances such as not to impair the obligation of contracts.
Parties taking- rights after the Legislature should have acted upon the subject have to do so with reference to existing laws.
*2145 It will be observed that Article 133 of the Constitution does not prohibit the existence of a privilege upon an immovable without registry, but declares that unless the privilege be recorded or registered, it shall not affect third persons.
The Legislature has thought proper to declare that crops, whether standing by the roots or cut down; whether on land occupied by lessees, or on land in possession and cultivated by the owners themselves, should quoad the rights of the furnisher of supplies be held to be a movable, and the general public therefore have to frame their contracts from that standpoint.
There is no more stretch of legislative power in making a crop standing by the roots upon an owner’s land — held to be for some purposes and under some circumstances, a movable, than there is in making the crop of a lessee standing by the roots upon property of another person, a movable.
Houses, though declared by the code to be immovable by their nature (C. C. 464) are sometimes held to be movable, and things essentially movable in their nature are by the force and power of the law frequently made to become immobilized.
The law has guarded with great care the rights of all parties, and sought to make private interests and the public good concur. It was essentially necessary that the farmers and planters of this State should be able to obtain advances to cultivate their property, and to that end .be placed in position to offer proper security to parties so advancing. The plan adopted by the General Assembly by whcih the prior mortgage creditor could enforce his mortgage and receive his payment unaffected by the existence of the privilege on the crop, and the party holding the privilege on the crop maintain his rights unaffected by the sale does justice and equity to all as far as it can be effected. (Citizens’ Bank vs. Wiltz, 31 Ann. 245; Perkins vs. Webster, Sheriff, 31 Ann. 875).
The plaintiff does not assert a claim of (personal indebtedness against either Beary or the Abby and Highland Planting and Manufacturing Company, Limited. If either or both have come under obligations by reason of a privilege upon the crop, it is by reason of their voluntary act in becoming purchasers of the same cum, onore.
It was the duty of the sheriff in offering the property for sale, to give notice that the property was sold subject to all privileges and hypothecations of whatsoever kind they might be. (C. P. 679.) The public was bound to know that there might and probably would be a privilege *2146 upon the crop, and that though the purchaser of the property would take the crop as part of the realty, and would not come under any personal liability therefor, yet he none the less would take the crop cumonore.
Any one buying the property would do so fully advised of the situation.
The District Court was of the opinion that registry was not necessary to preserve plaintiff’s privilege, but sustained an exception of no-cause of action, upon the ground that the proper action was not resorted to. In his reasons for judgment, the district judge says:
“I understand that the crop, subject to this privilege, passes cum. onore with the plantation seized and sold, upon which it stands at the time of the adjudication. The privileged creditor has the same right to assert his privilege against the crop as if no adjudication had taken place. But he has no personal action against the adjudicatee, or his-assigns into whose hands the crop lawfully passes by the adjudication and mesne conveyance.
“ Indeed, the case of Howe vs. Whited & Gibbs, 21 Ann. 495-497, seems to relegate the privilege creditor to his pro -i<ata of the price of adjudication-to be ascertained by a separate appraisement of the crop from the plantation with which it passes. Inasmuch as the crap passes with the plantation under the adjudication, and the price of adjudication is based both -on the plantation and the crop hanging by the roots,, this would seem to be the most just and equitable rule of the case.
“ At any rate, it is clear to me that the only action of the privileged creditor1 against the adjudicatee and his assigns to enforce the privilege, is one essentially in rem. The present action is not in rem; the thing itself is not propeeded against, not brought in custodia legis. The action as determined by the prayer of the petition is a personal one agaihst the exceptors' to compel them to render á full and faithful account of all the sugar and molasses and other products raised on the-plantations in question, during the year 1899, and to turn the proceeds over to plaintiffs, to the amount of their claim,' and in default thereof that plaintiffs may have judgment against the exceptors for the full' amount of the indebtedness of Kent & Weill to plaintiffs.
“ Such an action I am decidedly of tlie’ opinion cannot, under the facts set forth, be maintained against' the exceptors'.” •
We understand from these expressions that had the plaintiff accompanied his demand'by a sequestration of the crop, under which seques *2147 tration it would have been, placed in the sheriff’s hands, the court would have held the action'to have been properly brought.
We do not see the necessity as between the parties to this litigation that the crop upon which the plaintiff claims a privilege should have been placed under a seizure or sequestration to have enabled the court to have passed upon their respective rights and obligations. That remedy might'have been a proper and an important one to have guarded plaintiff’s rights on the crop, or its pr-Qceeds’ as against adverse claims which might be advanced upon the same by creditors of the defendants, but there were no such parties before the court, and no issue of that character had! to be determined. The parties defendants resided within the jurisdiction of the court; the plantation and the crop were, also, within the jurisdiction apd the matters ini dispute such as fall within the cognizance of the District Court. (Truxillo vs. Delaune, 47 Ann. 14.)
Plaintiff had the undoubted right to bring a personal action against their debtors, Joseph Weill and T. D. Kent, and to claim a recognition' of the privilege which their claim carried upon the crop, aixd inasmuch as it, the latter, had passed into third hands subject to the same, it was necessary for the protection of plaintiff’s rights that his demand should have gone to judgment contradictorily with all the parties in interest. "
The suit was brought and citation issued while the crop was on the' plaxxtation still hanging by the roots and subject to the privilege, in the possession of the Abby syid Highland Planting and Manufacturing Company, Limited. The citation upon it as effectually bound the compaxxy itself from that time forward not to dispose of the crop to the prejudice of plaintiffs’ rights, as if it had been enjoined to that effect, even though assignees or purchasers of the crop from it, after that date, should have successfully urged as against the plaintiffs, that they took the crop free from the privilege.
In Welsh vs. Barrow, 3rd Ann. 133, where the plaintiff brought suit" for the recovery of wages as an overseer-, claiming a privilege on the proceeds of a crop received by the defendant, the owner of the planta- ' tion from which the crop was- sold, the court said “that the services were rendered, that they bore a privilege on the crop, that the crop waá sold and the proceeds were received by the defendant, is conceded. It is ’ urged for the defendant that by the salé of the crop by Barrow the privilege was extinguished under Article 3244?’
“ By Article 3184 (New Article 3217) the salary of the overseer for *2148 the year last past, is privileged on the product of the last crop, thus presupposing that the planter would not keep his crop, but sell it, and the privilege is affixed specifically on the proceeds. Such is the construction given to this article by the Stipreme Court in the cases cited, and in the Succession of Johnson Kennedy, Ax^pellant, 3 Robinson 216, the court held that this privilege on the last year’s crop may be exercised upon the proceeds, after the crop has been sent to market and sold.”
“If the proceeds were in a court of justice or in the hands of the defendant’s factor, the plaintiff would have his privilege over the other creditors, and we do not understand on what principle he can be deprived of it, when the proceeds are in the defendant’s pocket.” (See on this subject 7 Ann. 526.)
The privilege in the case at bar is one resting not only on the crop, but on its proceeds; the litigation here is not between contesting adverse creditors, but between the party entitled to a privilege against the person having still possession of the property subject to it, who under the law stands quoad the privileged creditor in the shoes of the original owner of the crop. ■
It would make no difference after service of citation on it whether the defendant company should sell the crop or not, for should it sell it, the proceeds in its hands (money) would be subject to plaintiffs’ present demand. (Hewett vs. Williams, 48 Ann. 591).
It may be that the-plaintiffs would not be entitled to call upon the defendant for an account and would be forced to make direct ’ affirmative allegations as to the amount of the crop which had been received by it, and establish the allegation by proof, and it may be when the case goes to trial defendants may defeat plaintiffs’ demand either from some weakness in their evidence, or some circumstance not now disclosed, or from some defensive fact which thfe defendants will then advance, but these are matters which will be determined on the trial, and we are now dealing exclusively with an exception of “no cause of action.” It may not be amiss for us to say that the case is not one calling for a separate appraisement of plantation and crop.
A mistake made by plaintiffs as to their remedy or their urging some relief in his demand that he is not entitled to, does not lead up necessarily to a dismissal of their action upon an exception of “no cause of action.” (See B. J. Wolf & Son vs. New Orleans Tailor Made Pants Company, recently decided).
If-plaintiffs had or have any privilege at all, it is one upon the crop *2149 and not upon the land; a privilege upon the crop, considered as an object separate and distinct from the realty.
It is a privilege supporting plaintiffs’ debt upon, not a portion of the crop, but upon the crop in its entirety for the payment of the privilege claim to its full extent, unless other established, concurrent or preference claims should force a reduction.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled, avoided and reversed; and it is now ordered, adjudged and decreed that the exception of no cause of action filed in the District Court and sustained by it, be and it is 'hereby dismissed, and the cause, so far as it has been* dismissed, be reinstated, and the cause remanded to the District Court for further proceedings according to law.
Rehearing refused.